Robert W. Brundige, Jr.
Stephen Lanza
**HUGHES HUBBARD & REED LLP**
A NEW YORK LIMITED LIABILITY PARTNERSHIP
101 Hudson Street, Suite 3601
Jersey City, New Jersey 07302-3910
Telephone: (201) 536-9220
Telecopy: (201) 536-0799
Attorneys for Petitioner Denise A. Pinnock

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### NEWARK VICINAGE

| | |
|---|---|
| Denise A. PINNOCK,<br><br>Petitioner,<br>v.<br><br>Oscar AVILES, Chief of Corrections, Hudson County Department of Corrections; Christopher SHANAHAN, New York Field Office Director, Office of Detention and Removal, U.S. Immigration and Customs Enforcement; Janet NAPOLITANO, Secretary of Homeland Security; Eric HOLDER, Attorney General of the United States; and the U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Respondents. | Civil Action No. _____<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

### PRELIMINARY STATEMENT

Petitioner, Ms. Denise A. Pinnock ("Petitioner" or "Ms. Pinnock"), a Jamaican citizen who has resided in the United States since she arrived here as a child in 1977, has been detained by Respondents without a bond hearing for over two years, since January 7, 2009. Although it has been over one year since the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") ordered that Ms. Pinnock be removed from the U.S., Respondents have continued to hold her in custody while she presses a colorable challenge to her removal through a petition for review at the U.S. Court of Appeals for the Second Circuit. In addition, based on her

1

extensive assistance to the U.S. government in prosecuting Jamaican drug traffickers, the U.S. Attorney's Office for the Southern District of New York has filed an application for an S Visa[1] on Ms. Pinnock's behalf, which remains pending with the Drug Enforcement Administration.

Despite the efforts of the U.S. Attorney's Office to prevent Ms. Pinnock's removal to Jamaica, based on the recognition that she would face extreme danger there as a direct result of her assistance to that office, Immigration and Customs Enforcement ("ICE") detained Ms. Pinnock and placed her in removal proceedings.  Before the IJ, Ms. Pinnock applied for deferral of removal under the Convention Against Torture based on her fear of retaliation by those against whom she testified in federal district court.  Although the IJ was "convinced that if she is returned to Jamaica she may very well be killed by members of" the drug trafficking organization against which she testified, and of which she is a former member, he nevertheless ordered her removed on the grounds that Ms. Pinnock failed to demonstrate that the Jamaican government would acquiesce in such harm.[2]

ICE initially detained Ms. Pinnock on January 7, 2009, when she reported to her probation officer after completion of her criminal sentence.  At that time, ICE asserted that Ms. Pinnock's detention was "mandatory" and that she was thus not entitled to a bond hearing.  *See* Record of Deportable/Inadmissible Alien, Form I-213 ("Record of Deportable/Inadmissible Alien") (Jan. 14, 2009), attached hereto as Ex. A.  Over two years later, Ms. Pinnock remains in detention without ever having been provided any meaningful opportunity to be heard regarding her custody status.

---

1.  Pursuant to 8 U.S.C. § 1101(a)(15)(S), non-immigrant visas are available for certain non-citizens who provide critical, reliable information concerning a criminal organization or enterprise to state or federal law enforcement authorities.

2.  Thus, while one division of the Department of Justice – the U.S. Attorney's Office – is attempting to prevent Ms. Pinnock's removal, another component – the Executive Office for Immigration Review, which houses the immigration courts and the BIA – has ordered her removal.

ICE's detention of Ms. Pinnock without a bond hearing is illegal. Although ICE has provided Ms. Pinnock an opportunity to challenge her continued detention by considering her written request for release, such minimal review by the same agency that is seeking to remove her falls far short of the requirements of constitutional due process. Rather, the Constitution requires that Ms. Pinnock be granted a hearing before an impartial adjudicator where Respondents bear the burden of proving that her continued detention is necessary, and that a less restrictive form of supervision would not suffice to ensure her compliance with immigration requirements. "While it is true that a removable alien has no right to be in the country, it does not mean that he has no right to be at liberty. [The Supreme Court's decision in] *Zadvydas* [*v. Davis*] established that deportable aliens, even those who had already been ordered removed, possess a substantive Fifth Amendment liberty interest, and that the interest [is] violated by indefinite detention." *Ly v. Hansen*, 351 F.3d 263, 269 (6th Cir. 2003) (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)). Respondents' detention of Ms. Pinnock for over two years without a bond hearing violates both the Immigration and Nationality Act ("INA") and the Constitution.

Petitioner respectfully requests that this Court recognize that she is not subject to mandatory detention, and order her immediate release under reasonable conditions of supervision or, in the alternative, order a bond hearing before an impartial adjudicator.

## I. **PARTIES**

1.  Petitioner, Ms. Pinnock, lawfully immigrated to the United States from Jamaica at the age of 10 on June 27, 1977. She is currently being detained under the direction of Respondents at Hudson County Correctional Center in Kearny, New Jersey. Ms. Pinnock has a petition for review pending before the Second Circuit Court of Appeals and a request for an S Visa pending with the Drug Enforcement Administration. Prior to her arrest in 2005, she resided in the Bronx, New York.

3

2.    Respondent Oscar Aviles is named in his official capacity as the Chief of Corrections for the Hudson County Department of Corrections in Hudson County, New Jersey.  In this capacity, he is the immediate legal custodian of Petitioner.  His address is Hudson County Department of Corrections, 35 Hackensack Ave., Kearny, New Jersey 07032.

3.    Respondent Christopher Shanahan is named in his official capacity as the New York Field Office Director for the Office of Detention and Removal Operations for ICE within the U.S. Department of Homeland Security.  In this capacity, he is responsible for the administration of the immigration laws and the execution of detention and removal determinations, and is a legal custodian of Petitioner.  Respondent Shanahan's address is Office of Detention and Removal Operations, Field Office Director, 26 Federal Plaza, New York, New York 10038.  Although Ms. Pinnock is detained in New Jersey, the New York Field Office of ICE retains authority over her custody status because her removal proceeding took place in New York.

4.    Respondent Janet Napolitano is named in her official capacity as the Secretary of Homeland Security.  In this capacity, she is responsible for the administration of the immigration laws pursuant to section 103(a) of the INA, 8 U.S.C. § 1103(a) (2007); routinely transacts business in the District of New Jersey; supervises Respondent Shanahan; is legally responsible for pursuing Petitioner's detention and removal; and as such is a legal custodian of Petitioner.  Respondent Napolitano's address is U.S. Department of Homeland Security, Washington, D.C.  20528.

5.    Respondent Eric Holder is named in his official capacity as the Attorney General of the United States.  In this capacity, he is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review pursuant

to INA § 103(g), 8 U.S.C. § 1103(g), routinely transacts business in the District of New Jersey, is legally responsible for administering Petitioner's removal proceedings and the standards used in those proceedings, and as such is a legal custodian of Petitioner. Respondent Holder's address is U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

6.    Respondent Department of Homeland Security ("DHS") is the federal agency responsible for enforcing Petitioner's continued detention pending her removal proceedings. DHS's address is U.S. Department of Homeland Security, Washington, D.C. 20528.

## II. <u>JURISDICTION</u>

7.    Petitioner is detained at the Hudson County Correctional Center, 35 Hackensack Ave., Kearny, New Jersey 07032, within this Court's jurisdiction.

8.    This Court has subject matter jurisdiction over this Petition for Writ of Habeas Corpus and is authorized to grant the relief requested herein under 28 U.S.C. § 2241, 28 U.S.C. § 1331, U.S. Const. art. 1, § 9, cl. 2; the All Writs Act, 28 U.S.C. § 1651; the Administrative Procedure Act, 5 U.S.C. §§ 701-706; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. Petitioner's current detention as enforced by Respondents constitutes a "severe restraint[] on [Petitioner's] individual liberty" (*Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973)), such that Petitioner is "in custody in violation of the . . . laws . . . of the United States." (28 U.S.C. § 2241.)

## III. <u>VENUE</u>

9.    Venue properly lies in the District of New Jersey because Petitioner is detained at the Hudson County Correctional Center, 35 Hackensack Ave., Kearny, New Jersey 07032.

### IV. <u>EXHAUSTION</u>

10.   On October 13, 2010, The Legal Aid Society submitted a request for Ms. Pinnock's

release from detention to her deportation officer at the New York ICE Field Office.  *See*

Ex. B, Request for Release from Custody ("Release Request") (Oct. 13, 2010).  By letter

dated November 5, 2010, the New York Field Office Director, Christopher Shanahan,

denied the request for release based on Ms. Pinnock's criminal record.  *See* Ex. C, Field

Office Director Shanahan's Denial of Release Request ("Shanahan's Denial")

(Nov. 5, 2010).

11.   Because Ms. Pinnock's removal order is administratively final, the Immigration Court no

longer has jurisdiction over her custody.  8 C.F.R. § 236.1(d)(1).  Accordingly, it would

be futile for her to request a bond hearing before an Immigration Judge at this time.

### V. <u>FACTS REGARDING MS. PINNOCK AND HER CURRENT DETENTION</u>

12.   Ms. Pinnock is a citizen of Jamaica, W.I.  She immigrated to the United States on June

27, 1977 as a lawful permanent resident when she was 10 years old.  *See* Ex. D,

Immigrant Visa and Alien Registration.  Ms. Pinnock has two children who are U.S.

citizens, Tamika McLean and Shaquille John.  *See* Ex. E, Children's Birth Certificates.

Ms. Pinnock's mother, Ms. Gloria Grant, has been a lawful permanent resident of the

United States since 1972, and resides in Queens, New York.  Her brother, Mr. Colin

Pinnock, is a naturalized U.S. citizen and also resides in Queens, New York.  Prior to her

arrest in 2005, Ms. Pinnock resided in the Bronx, New York and was employed as a

certified home health aide.  *See* Ex. F, Presentence Investigation Report at 26 (Oct. 10,

2008).

13.   At the age of 22, on or about November 26, 1990, Ms. Pinnock was convicted of

Possession of Cocaine with Intent to Distribute in Norfolk, Virginia.  She was sentenced

to six years' confinement with three years suspended for the term of five years, conditioned upon good behavior and payment of a fine and costs, and five years of unsupervised probation.  Ex. F, Presentence Investigation Report at 24.  Removal proceedings were initiated against Ms. Pinnock as a result of this conviction, and she was granted relief from removal under former § 212(c) of the INA in October 1992.  *See* Ex. G, *Denise Antoinette Pinnock,* File No. 35544477, Memorandum of Oral Decision of Immigration Judge (Oct. 8, 1992).

14.   Subsequently, Ms. Pinnock became romantically involved with a man named Duwayne John, and they had a son together in 1995.  Ex. E, Children's Birth Certificates.  Mr. John founded a record label based in Jamaica called the John Shop and operated a marijuana trafficking organization that came to be known as the John Shop Crew.  Ex. F, Presentence Investigation Report at 9-22.  Mr. John regularly subjected Ms. Pinnock to severe physical abuse and tried to control most aspects of her life.  *See* Ex. H, Affidavit of Denise Pinnock ("Pinnock Aff.") ¶¶ 6-8.

15.   Ms. Pinnock was arrested for her involvement in the John Shop Crew on January 27, 2005, and was convicted on November 13, 2008 of Conspiracy to Distribute and Possess with Intent to Distribute Marijuana under 21 U.S.C. §§ 846, 841(b)(1)(C); Distribution and Possession with Intent to Distribute Marijuana under 21 U.S.C. § 841(b)(1)(A); and Carrying and Use of a Firearm in Relation to a Drug Trafficking Crime under 18 U.S.C. § 924(c)(1)(A).  Ex. F, Presentence Investigation Report at 3 (stating arrest date); Ex. I, Judgment in a Criminal Case at 1 (Nov. 13, 2008) (stating offenses).  She was sentenced to time served and three years supervised release.  Ex. I, Judgment in a Criminal Case at 2-3.

16.     During the period when Ms. Pinnock was in federal criminal custody, she worked closely

with the U.S. Attorney's Office for the Southern District of New York, providing

"significant and useful assistance to the Government in connection with the successful

prosecution" of several members of the John Shop Crew.  *See* Ex. J, Letter from U.S.

Attorney's Office to The Hon. Robert P. Patterson ("Letter from U.S. Attorney's Office")

at 5 (Oct. 13, 2008).  Ms. Pinnock personally testified against these individuals, face-to-

face in court, even though she was aware of the "violent histories" and "penchant for

revenge" of those against whom she testified.  *Id.* at 4.  According to the U.S. Attorney's

Office, Ms. Pinnock "took full responsibility for her own conduct" and "expressed

profound remorse for her wrongdoing."  *Id.* at 3-4.

17.     Following her release from federal custody on November 13, 2008, Ms. Pinnock moved

in with her mother, Ms. Gloria Grant, at 97-22 57th Ave., Apt. 7M, Corona, New York

11368.  Ms. Pinnock took immediate steps to start rebuilding her life by actively seeking

employment.  She had previously been certified as a home health aide and hoped to find

employment in that capacity.  *See* Ex. K, Affidavit of Gloria Grant ("Grant Aff.") ¶¶ 5, 7,

10; Ex. H, Pinnock Aff. ¶¶ 2, 12; Ex. L, Affidavit of Andrea Scott ("Scott Aff.") ¶ 7.

18.     On January 7, 2009—approximately two months after her release from jail—Ms.

Pinnock's attempts to rebuild her life were interrupted when, during a meeting with her

probation officer, ICE officers took her into their custody.  Ex. A, Record of

Deportable/Inadmissible Alien.  At that time, Ms. Pinnock was served with a Notice to

Appear dated January 5, 2009.  *See* Ex. M, Notice to Appear, Form I-862 ("NTA") (Jan.

5, 2009).  DHS determined that Ms. Pinnock was subject to mandatory detention and put

her in ICE custody.  Ex. A, Record of Deportable/Inadmissible Alien.  Ms. Pinnock is

currently detained at Hudson County Correctional Center in Kearny, New Jersey. On January 7, 2009, Ms. Pinnock was placed in removal proceedings at the Varick Immigration Court at 201 Varick Street in New York, New York, with her first master calendar hearing scheduled for January 14, 2009. Ex. M, NTA at 1.

19.     The NTA alleged that Ms. Pinnock is removable based on: (1) an aggravated felony charge under INA § 237(a)(2)(A)(iii) as defined in INA § 101(a)(43)(B) for an offense relating to illicit trafficking in a controlled substance (based on her 2008 conviction for Distribution and Possession with Intent to Distribute Marijuana under 21 U.S.C. § 841(b)(1)(A)); (2) an aggravated felony charge under INA § 237(a)(2)(A)(iii) as defined in INA § 101(a)(43)(U) for the violation of a law relating to an attempt or conspiracy to commit an offense described in INA § 101(a)(43) (based on her 2008 conviction for Conspiracy to Distribute and Possess with Intent to Distribute Marijuana under 21 U.S.C. § 846, 841(b)(1)(C)); (3) the violation of a law relating to a controlled substance (marijuana) under INA § 237(a)(2)(B)(i); and (4) a firearms offense under INA § 237(a)(2)(C) (based on her 2008 conviction for Carrying and Use of a Firearm in Relation to a Drug Trafficking Crime under 18 U.S.C. § 924(c)(1)(A)). Ex. M, NTA at 2.

20.     Ms. Pinnock first appeared, unrepresented, at a master calendar hearing in Immigration Court on January 14, 2009 before Immigration Judge Alan L. Page. *See* Ex. N, *In re Denise Antoinette Pinnock*, File A 035 544 477, at 3 (Jan. 27, 2010) ("Decision of Immigration Judge"). On March 4, 2009, Ms. Pinnock had a subsequent master calendar hearing, but was still unable to find representation. *Id.* Nevertheless, the IJ took the pleadings and found Ms. Pinnock removable based on all four charges in the NTA. *Id.* at 3-4. Ms. Pinnock indicated that she was fearful of returning to Jamaica because she had

cooperated with U.S. law enforcement authorities to prosecute drug traffickers. *Id.* at 4. Ms. Pinnock was subsequently given a Form I-589 (Application for Asylum and for Withholding of Removal) to complete. *Id.*. Ms. Pinnock also stated that she had an S visa request pending. *Id.* at 5.

21.    Ms. Pinnock next appeared in Immigration Court on April 29, 2009. Ms. Pinnock managed to secure representation and was represented by Rev. Robert Vitaglione, an accredited representative but a non-lawyer, and his affiliates. *Id.* at 4. Ms. Pinnock submitted an I-589 on May 28, 2009. *Id.* Rev. Vitaglione stated that the only relief he would pursue on behalf of Ms. Pinnock was deferral of removal pursuant to Article 3 of the Convention Against Torture ("CAT"). *Id.* at 5.

22.    On January 27, 2010, Immigration Judge Page denied Ms. Pinnock's application for protection under the CAT. Although Judge Page was "convinced that if [Ms. Pinnock] is returned to Jamaica she may very well be killed by members of the John Shop Crew, he nevertheless ordered her removed on the grounds that she failed to demonstrate that the Jamaican government would acquiesce in such harm." *Id.* at 13-15. Judge Page ordered Ms. Pinnock deported to the United Kingdom, or in the alternative, to Jamaica. *Id.* at 15-16.

23.    Ms. Pinnock timely appealed the IJ decision to the BIA, but her representative failed to file a brief before the deadline set by the BIA. The BIA summarily dismissed Ms. Pinnock's appeal on May 12, 2010 under 8 C.F.R § 1003.1(d)(2)(i)(A) for failure to specify the reasons underlying the challenge to the IJ's decision. *See* Ex. O, *In re Denise Antoinette Pinnock*, A035 544 477 (B.I.A. May 12, 2010) ("BIA Decision").

24. Ms. Pinnock filed a timely petition for review and a motion for a stay of removal with the Second Circuit Court of Appeals on June 8, 2010. *See* Ex. P, General Docket, Second Circuit Court of Appeals, *Pinnock v. Holder*, No. 10-2279 ("Docket Sheet"). Upon filing the stay of removal, Ms. Pinnock's removal has effectively been stayed pursuant to the Second Circuit's Forbearance Policy.[3] *See* Ex. Q, U.S. ICE, Decision to Continue Detention ("Decision to Continue Detention") at 1 (July 27, 2010) (stating that Ms. Pinnock's "[Petition for Review] is currently pending, and a Stay of Removal" remains in effect). Subsequently, The Legal Aid Society in New York entered an appearance on behalf of Ms. Pinnock and continues to represent her before the Second Circuit Court of Appeals.[4] Briefing in that case has been suspended due to the pending S visa application.

25. On October 13, 2010, The Legal Aid Society submitted a request for Ms. Pinnock's release from detention to her deportation officer at the New York ICE Field Office. Ex. B, Release Request. By letter dated November 5, 2010, the New York Field Office Director, Christopher Shanahan, denied the request for release based on Ms. Pinnock's criminal record. Ex. C, Shanahan's Denial.

26. Ms. Pinnock's release request explains that she is neither a flight risk nor a danger to the community. Ex. B, Release Request. The release request explains that Ms. Pinnock has lived in the United States for over thirty years, and her children and several other

---

3. The Forbearance Policy is a standing agreement between the Second Circuit and the U.S. Attorney General whereby the DHS will not remove a noncitizen who has requested a stay of removal with a petition for review of a removal order in the Second Circuit unless the court grants a motion by the government to oppose the stay or the court otherwise denies the stay motion. *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 191 (W.D.N.Y 2010) (describing Forbearance Policy). Although Ms. Pinnock's request for a stay of removal has been neither granted nor denied by the Second Circuit, her removal has been stayed pursuant to the Forbearance Policy.

4. The primary claims raised in the petition for review is that the IJ misapplied the legal terms "acquiescence" and "willful blindness" in his analysis of the Jamaican government's relation to the individuals who would seek to harm Ms. Pinnock if she is removed to Jamaica, and that he applied the wrong standard of evidence in determining whether or not the Jamaican government would acquiesce to that harm.

members of her family and friends live in the area. *Id.* She has a close-knit support network that would provide her with a place to live and would help her seek employment. *Id.* If released, Ms. Pinnock will live her mother, Ms. Gloria Grant, at 97-22 57th Avenue in Corona, New York. *Id.*

27.     During her incarceration, Ms. Pinnock has undertaken many efforts to spend her time productively and prepare for a law-abiding life when she is released from custody. While at Hudson County Correctional Center, she has completed a GED course and obtained her high school diploma. *See* Ex. R, H.S. Diploma and GED Transcript. Before being arrested in 2005, Ms. Pinnock was enrolled in courses at Monroe College and successfully completed two semesters there. *See* Ex. S, Monroe College Transcript. She has been in charge of doing the hair dressing for all of the women in her unit at Hudson County Correctional Center, for which she gets paid $7.00 per week. *See* Ex. T, Hudson County Jail Resident Transaction Receipts. Ms. Pinnock's close family friend, Andrea Scott, who is employed as a dietary aid at North Central Bronx Hospital, has pledged to do anything she can to help Ms. Pinnock return to working as a nurse's aide. Ex. L, Scott Aff. ¶ 8. If released, Ms. Pinnock would also be supervised by the U.S. Department of Probation, which the District Court had previously ordered to provide Ms. Pinnock with educational and vocational training and to assist her in finding employment. Ex. I, Judgment in a Criminal Case at 4.

28.     If released, Ms. Pinnock would also focus on helping to support her two U.S. citizen children. As stated by Ms. Pinnock's life-long family friend, Andrea Scott, Denise is "a wonderful mother," and, before her incarceration, "was always there for her kids." Ex. L, Scott Aff. ¶ 5. Ms. Pinnock's own top priority in life is her children. Despite her past

mistakes, she is determined to turn her life around and set a positive example for them. Ex. H, Pinnock Aff. ¶¶ 13-14.

29.     Ms. Pinnock has every incentive to comply with any supervision requirements that might be imposed if she is released.  She is represented by Legal Aid in her petition for review pending at the Second Circuit Court of Appeals.  Ex. P, Docket Sheet.  In addition, the U.S. Attorney's Office has requested that Ms. Pinnock be granted an S Visa due to her extensive assistance to that office and to the U.S. Attorney's Office.  Ex. J, Letter from U.S. Attorney's Office.  The S Visa request is now pending with DEA Headquarters.  *See* Ex. U, Email from Greg Finning, DEA Agent (July 28, 2010).  The S Visa request is based on Ms. Pinnock's provision of "significant and useful assistance to the Government in connection with the successful prosecution" of several members of a major drug trafficking organization.  Ex. J, Letter from U.S. Attorney's Office at 5.  As explained by the U.S. Attorney's Office, Ms. Pinnock provided this assistance even though she was aware of the "violent histories" and "penchant for revenge" of those against whom she testified.  *Id.* at 4.

30.     In addition, there is no likelihood that Ms. Pinnock will be removed from the United States in the reasonably foreseeable future.  It is impossible to predict how long it will take before Ms. Pinnock's application for an S visa and petition for review are resolved. At the very least, the petition for review will remain pending for several more months, if not more than a year.  Due to the pending S Visa application, the petition for review has been withdrawn without prejudice to reinstatement on or before June 28, 2011.  Ex. P, Docket Sheet.

31.     Although Ms. Pinnock has a prior criminal history, it is offset by her extensive and

invaluable assistance to the government to prosecute notorious drug traffickers despite

the risks to her safety, her remorse for her past actions, and her rehabilitation.  Out of

detention, she will be reunited with her children and will receive the support she needs to

maintain a healthy and productive life as a member of the community.

## VI.  STATEMENT OF CLAIMS

A.     Statutory and Regulatory Framework Governing Immigration Detention

32.     ICE's authority to detain non-citizens during and after removal proceedings is governed

by INA §§ 236 and 241, 8 U.S.C. §§ 1226 and 1231 and their implementing regulations.

Section 236 of the INA, 8 U.S.C. § 1226 governs detention "pending a decision on

whether the alien is to be removed from the United States."  Detention pending removal

proceedings may be discretionary, pursuant to INA § 236(a), 8 U.S.C. § 1226(a), or

mandatory, pursuant to INA § 236(c), 8 U.S.C. § 1226(c).  Pursuant to INA § 236(c), 8

U.S.C. § 1226(c), ICE must detain individuals who are charged with removability based

on certain criminal grounds "when the alien is released, without regard to whether the

alien is released on parole, supervised release, or probation, and without regard to

whether the alien may be arrested or imprisoned again for the same offense."

33.     Section 241 of the INA, 8 U.S.C. § 1231 governs detention during the "removal period."

The removal period is the 90-day period commencing "on the latest of the following:  (i)

The date the order of removal becomes administratively final.  (ii) If the removal order is

judicially reviewed and if a court orders a stay of the removal of the alien, the date of the

court's final order. (iii) If the alien is detained or confined (except under an immigration

process), the date the alien is released from detention or confinement."  INA

§ 241(a)(1)(B), 8 U.S.C. § 1231(a)(1)(B).

B.  <u>Respondents are erroneously treating Ms. Pinnock as if her removal period had already</u>
<u>commenced.  In fact, INA § 241, 8 U.S.C. § 1231 does not apply to her present detention.</u>
<u>Even if it did, her detention would not be justified because ICE has not complied with the</u>
<u>custody review procedures required by the relevant regulations, and, in any event, the</u>
<u>evidence demonstrates that Ms. Pinnock is neither a flight risk nor a danger to the</u>
<u>community, and that her removal is not reasonably foreseeable.</u>

34.     None of the documents served on Ms. Pinnock since the time of her initial custody

determination explicitly state the statutory basis for her present detention.  The custody

review procedures that ICE has followed since Ms. Pinnock's appeal was dismissed by

the BIA, however, seem to suggest that ICE considers Ms. Pinnock's current detention to

be governed by INA § 241, 8 U.S.C. § 1231.  In the case of noncitizens ordered removed

based on criminal grounds, the regulations implementing that provision state that "the

district director or Director of the Detention and Removal Field Office will conduct a

records review prior to the expiration of the removal period," and "provide written notice

to the detainee approximately 30 days in advance of the pending records review."  8

C.F.R. § 241.4(h)(1)-(2).  Apparently pursuant to these regulations, Respondents served

Ms. Pinnock with a Notice to Alien of File Custody Review, informing her that she is

"required to cooperate with the ICE in effecting [her] removal from the United States,"

and that "[i]f ICE has not removed [her] from the United States within the removal period

as set forth in INA 241(a) (normally 90-days) of either:  1) [her] entering INS/ICE

custody with a final order of removal, deportation or exclusion, or 2) the date of any final

order [she] receive[s] while [she is] in INS/ICE custody, the ICE Deciding Official will

review [her] case for consideration of release on an Order of Supervision."  *See* Ex. V,

Notice to Alien of File Custody Review at 1.  The notice further informed Ms. Pinnock

that her custody status would be reviewed on or about July 26, 2010.  *Id.*

35.     Respondents also served Ms. Pinnock with a Form I-229(a) Warning for Failure to
        Depart, dated June 8, 2010.  *See* Ex. W, Warning for Failure to Depart (June 8, 2010).
        That form states the penalties for failing to cooperate with ICE's efforts to effectuate a
        removal order, as specified by INA § 243(a), 8 U.S.C. § 1253(a).  *Id.* at 1.  Finally, in
        their denial of Ms. Pinnock's request to be released from custody, dated July 27, 2010,
        Field Office Director Shanahan stated that Ms. Pinnock is to "remain in ICE custody
        pending the issuance of a travel document" and that "[i]f necessary, another review of
        your custody will be conducted by ICE within a year of the date of this notice."  Ex. C,
        Shanahan's Denial.

36.     Because Ms. Pinnock has *a de facto* stay of removal,[5] however, her removal period has
        not yet begun and, therefore, the custody review procedures specified by 8 C.F.R. § 241
        do not apply to her.  *See Luna-Aponte v. Holder*, 743 F.Supp.2d 189, 197 (W.D.N.Y.
        2010)  ("[A]lthough Petitioner does not meet the precise definition of 8 U.S.C.
        § 1231(a)(1)(B)(ii), the Court nevertheless finds that, for purposes of this action, the
        forbearance policy is the equivalent of a court-ordered stay of removal. Consequently, the
        Court finds that Petitioner is being detained pursuant to INA § 236, and that his removal
        period has not yet begun.")*; Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942,
        947 (9th Cir. 2008).  Because Ms. Pinnock is not yet in the removal period, her present
        detention is not authorized by INA § 241, 8 U.S.C. § 1231.

37.     Even if the Court were to determine that Ms. Pinnock's custody is governed by INA
        § 241, 8 U.S.C. § 1231, her current detention would not be justified.  Some district courts

---

5.  Respondents appear to agree that Ms. Pinnock's pending petition for review stays her removal order.  In the
    Decision to Continue Detention, Field Office Director Shanahan states that her "PFR is currently pending, and a
    Stay of removal remains in effect."  Ex. Q, Decision to Continue Detention.

have found that the detention of non-citizens who, like Ms. Pinnock, have pending stay motions in the Second Circuit and who are therefore subject to the forbearance policy, is governed by INA § 241, 8 U.S.C. § 1231 because they do not have a court-ordered stay. *See D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 382 (W.D.N.Y. 2009); *Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747, 751 (M.D.Pa. 2004).  Even if Ms. Pinnock's detention is governed by that provision, though, her detention is not justified both because ICE has failed to apply the required custody review procedures and proper application of those procedures compels Ms. Pinnock's release.

38.   Pursuant to 8 C.F.R. § 241.4(h), "the district director or Director of the Detention and Removal Field Office will conduct a records review prior to the expiration of the removal period."  It is unclear whether or not ICE considered its Decision to Continue Detention, dated July 27, 2010, to have been rendered in accordance with this regulation.  Ms. Pinnock's removal period expired on August 10, 2010 – 90 days after the date when the BIA dismissed her appeal, May 12, 2010.  Thus, the Decision to Continue Detention was based on a custody review occurring "prior to the expiration of the removal period," as required by 8 C.F.R. § 241.4(h).

39.   However, other aspects of the July 27, 2010 Decision to Continue Detention do not comply with the regulations.  For instance, the regulations state that "[t]he district director's or Director of the Detention and Removal Field Office's custody determination *will* include but is not limited to consideration of the factors described in paragraph (f) of this section."  8 C.F.R. § 241.1(h)(3) (emphasis added).  These factors are:

> (1) The nature and number of disciplinary infractions or incident reports received when incarcerated or while in Service custody;
>
> (2) The detainee's criminal conduct and criminal convictions, including consideration of the nature and severity of the alien's convictions, sentences

imposed and time actually served, probation and criminal parole history, evidence of recidivism, and other criminal history;

(3) Any available psychiatric and psychological reports pertaining to the detainee's mental health;

(4) Evidence of rehabilitation including institutional progress relating to participation in work, educational, and vocational programs, where available;

(5) Favorable factors, including ties to the United States such as the number of close relatives residing here lawfully;

(6) Prior immigration violations and history;

(7) The likelihood that the alien is a significant flight risk or may abscond to avoid removal, including history of escapes, failures to appear for immigration or other proceedings, absence without leave from any halfway house or sponsorship program, and other defaults; and

(8) Any other information that is probative of whether the alien is likely to—

(i) Adjust to life in a community,

(ii) Engage in future acts of violence,

(iii) Engage in future criminal activity,

(iv) Pose a danger to the safety of himself or herself or to other persons or to property, or

(v) Violate the conditions of his or her release from immigration custody pending removal from the United States.

8 C.F.R. § 241.4(f).

40.    There is no indication in the July 27, 2010 Decision to Continue Detention that any of these factors, other than Ms. Pinnock's criminal and immigration history, were considered.  Rather, the Decision to Continue Detention simply recites Ms. Pinnock's immigration and criminal history,[6] and states that travel document presentations were sent to the Consulate Generals of the United Kingdom and Jamaica.  The Decision then

---

6.  The Decision incorrectly states that "[o]n January 7, 2009," Ms. Pinnock was "released from federal custody and placed into ICE custody."  In fact, Ms. Pinnock was released from federal custody on November 13, 2008.  *See* Ex. X, Federal Bureau of Prisons Inmate Locator.

concludes that "[b]ased on the aforementioned factors, [Ms. Pinnock is] to remain in ICE custody pending the issuance of a travel document." Ex. Q, Decision to Continue Detention. Of particular note, the Decision makes no mention of Ms. Pinnock's extensive assistance to law enforcement or the pending S Visa application.

41.    The Decision to Continue Detention also fails to comply with the regulations for post-order custody reviews in that it states that "[i]f necessary, another review of your custody will be conducted by ICE within a year of the date of this notice." Ex. Q, Decision to Continue Detention. The regulations, however, require further review by the Headquarters Post-Order Detention Unit ("HQPDU") for "any alien who has not been released or removed by the expiration of the three-month period after the [initial custody] review." 8 C.F.R. § 241.4(c)(2).

42.    Further, there is no indication that the HQPDU has ever reviewed Ms. Pinnock's custody, despite the fact that, if "the alien is not removed within three months of the district director's [initial custody] decision, authority over the custody determination transfers from the district director or Director of the Detention and Removal Field Office to the Executive Associate Commissioner." 8 C.F.R. § 241.4(k)(2)(ii). The regulation further provides for an initial HQPDU review to "be conducted at the expiration of the three-month period after the 90-day review or as soon thereafter as practicable." *Id.* Almost nine months have elapsed since the July 27, 2010 Decision to Continue Custody and Ms. Pinnock has yet to receive a custody review by the HQPDU.

43.    The only custody review that ICE has conducted since its initial review was in response to The Legal Aid Society's request for Ms. Pinnock to be released. That request included affidavits by Ms. Pinnock, her mother, and a close family friend; evidence of

rehabilitation including education and employment during her incarceration; evidence of Ms. Pinnock's extensive cooperation with the U.S. Attorney's Office; and evidence of a persistent medical problem involving a painful lump in Ms. Pinnock's nasal cavity for which she had unsuccessfully been seeking treatment for over a year while detained by ICE. Ex. B, Release Request. In a letter dated November 5, 2010, Field Office Director Shanahan denied that request. Although the letter stated that he had "carefully considered the assertions made in [the] request for her release" and "Ms. Pinnock's claims of strong family ties," it did not mention any of the other factors favoring release, nor did it explain why Ms. Pinnock was a flight risk or a danger other than citing her past criminal activity. Ex. C, Shanahan's Denial.

44.     The custody review procedures set forth at 8 C.F.R. § 241.4 are intended to enforce the Supreme Court's holding in *Zadvydas v. Davis* that the INA, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. 678, 689 (2001). *Zadvydas* concluded that detention is presumptively reasonable for a period of six months after a final order of removal, beyond which "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Ms. Pinnock has been detained for well over 6 months since her removal order became final in May 2010. In light of her pending S visa application and pending petition for review, there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." The government, however, has made no attempt to demonstrate otherwise.

45.     Like in *D'Alessandro*, ICE's review of Ms. Pinnock's custody is "grossly defective in

constitutional terms, and . . . its decisions to continue detention are neither in accordance

either [*sic*] with Due Process requirements as interpreted by *Zadvydas v. Davis* nor in

compliance with DHS/ICE's own regulations." 628 F. Supp. 2d at 406. As the Third

Circuit stated in *Ngo v. INS*, "presenting danger to the community at one point by

committing crime does not place [a person] forever beyond redemption. . . . Measures

must be taken to assess the risk of flight and danger to the community on a current basis.

The stakes are high and we emphasize that grudging and perfunctory review is not

enough to satisfy the due process right to liberty, even for aliens." 192 F.3d 390, 398 (3d

Cir. 1999).

C.      Ms. Pinnock's present detention is not authorized by INA § 236(c), 8 U.S.C. § 1226(c),
        both because the administrative removal proceedings against her are no longer pending
        and because she was not detained by ICE "when released" from criminal custody.

46.     INA § 236(c), 8 USC § 1226(c) does not apply to Ms. Pinnock because that section

"was intended only to 'govern[] detention of deportable criminal aliens *pending their*

*removal proceedings.*'" *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 948

(9th Cir. 2008) (quoting *Demore v. Kim*, 538 U.S. 510 (2003)).7 In *Casas-Castrillon*, the

Ninth Circuit unequivocally ruled that INA § 236(a), 8 U.S.C. §1226(a), providing for

discretionary detention, applies in this situation. District courts outside the Ninth Circuit

have cited *Casas-Castrillon*'s reasoning favorably. *See, e.g., Monestime v. Reilly*, 704 F.

Supp. 2d 453, 457-58 (S.D.N.Y. 2010) (citing *Casas-Castrillon* for the proposition that if

---

7.  INA § 236(a), 8 U.S.C. § 1226(a), regarding discretionary detention, states that "an alien may be arrested and
    detained *pending a decision on whether the alien is to be removed from the United States*" (emphasis added ).
    The Ninth Circuit has interpreted "a decision on whether the alien is to be removed from the United States" to
    include the judicial review of a removal order. *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 948
    (9th Cir. 2008) (stating that "[i]t is reasonable to consider judicial review of a removal order as part of the
    process of making an ultimate 'decision' as to whether an alien 'is to be removed.'" (quoting *Prieto-Romero v.
    Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008)).

a noncitizen challenges a removal order in federal court, he is subject to discretionary

detention under INA § 236(a)); *Duhaney v. U.S. Dep't of Homeland Sec.*, No. 4:09-CV-

00366, 2009 WL 3182513, at *3 (M.D.Pa. Sept. 30, 2009) (citing approvingly *Casas-*

*Castrillon* for the proposition that INA § 236(c) only applies during administrative

removal proceedings; therefore, after the BIA dismissed the noncitizen's appeal, the

Attorney General's authority to detain him shifted to INA § 236(a)).

47.   Administrative removal proceedings are no longer pending against Ms. Pinnock because

the "conclusion of [removal] proceedings" occurs upon the dismissal of a noncitizen's

appeal by the BIA. *See* 8 C.F.R. § 1241.1(a). The BIA dismissed Ms. Pinnock's appeal

on May 12, 2010. Ex. O, BIA Decision. Because the administrative proceedings against

Ms. Pinnock have been concluded, INA § 236(c), 8 U.S.C. § 1226(c) provides no

authority for her detention. Instead, Respondents' only legal basis for detaining Ms.

Pinnock is INA § 236(a), 8 U.S.C. § 1226(a), providing for discretionary detention.

48.   Moreover, Ms. Pinnock does not fall within the provisions of INA § 236(c), 8 U.S.C.

§ 1226(c) because she was not detained "when . . . released" from her sentence for the

conviction that made her removable—or, indeed, from any criminal custody. The

mandatory detention statute provides in relevant part that the Attorney General "shall

take into custody an alien who is deportable by reason of having committed any

[enumerated offense] *when the alien is released* . . . . for the same offense." INA

§ 236(c), 8 U.S.C. § 1226(c) (emphasis added).

49.   Federal district courts have recognized that ICE may only detain an individual on or

around the time of her release from custody, holding that such release must specifically

relate to one of the enumerated removable offenses. *See, e.g., Scarlett v. Dep't of*

*Homeland Sec.*, 632 F. Supp. 2d 214, 219 (W.D.N.Y. 2009) (holding that petitioner who was detained by ICE several months after being released from criminal custody was not subject to § 236(c)); *Waffi v. Loiselle*, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007) (holding that petitioner detained by ICE over one month after his release from criminal custody was not subject to § 236(c)); *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1224 (W.D. Wash. 2004) (holding that an alien who was taken into immigration custody months or years after his release from state custody was entitled to an individualized hearing on release pending removal proceedings); *see also Garcia v. Shanahan*, 615 F. Supp. 2d 175, 180-81 (S.D.N.Y. 2009) (collecting cases and stating that "[f]or over a decade, courts analyzing Section 1226(c) have consistently interpreted the statute to authorize the government to take an alien into custody *on or about the time* he is released from custody for the offense that renders him removable" (emphasis added)); *Bromfield v. Clark*, No. C06-757RSM, 2007 WL 527511, at *3 (W.D. Wash. Feb. 14, 2007) (collecting cases).

50.     Ms. Pinnock was not detained by ICE "when . . . released" from custody at all; she was detained by ICE at a meeting with her probation officer on January 7, 2009, almost two months *after* her release from her most recent criminal custody on or about November 13, 2008. Ex. A, Record of Deportable/Inadmissible Alien.

51.     The plain language and clear statutory meaning of the mandatory detention statute foreclose application to persons who are not detained when they are released from incarceration for an enumerated offense under the statute, much less to persons apprehended almost two months after their release. Any contrary reading would be unreasonable. *See, e.g., Oscar v. Gillen*, 595 F.Supp.2d 166, 169 (D. Mass. 2009) (finding that the government's interpretation of 8 U.S.C. § 1226(c) to apply "'any time

after the alien is released' . . . perverts the plain language of the statute."); *Scarlett v.
Dep't of Homeland Sec.*, 632 F. Supp. 2d 214, 219 (W.D.N.Y. 2009) ("[T]he clear
language of the statute indicates that the mandatory detention of aliens 'when' they are
released requires that they be detained at the time of release. [I]f Congress had intended
for mandatory detention to apply any time after they were released, it could easily have
used the language 'after the alien is released,' 'regardless of when the alien is released,'
or other words to that effect.") (quoting *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221,
1224 (W.D. Wash. 2004)); *Waffi v. Loiselle*, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007)
("The term 'when' includes the characteristic of 'immediacy,' referring in its primary
conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other
action has ceased or begun . . . . Additionally, it would be contrary to the plain language
of [8 U.S.C. § 1226(c)]'s command that the Attorney General take into immigration
custody certain criminal aliens 'when' those aliens are released from state custody to
include those aliens who had 'already' been released from state custody. Moreover,
statutory language should not be construed in a way that renders a term surplusage.")
(citations omitted). For these reasons, Ms. Pinnock is not subject to mandatory detention
under a reading of the plain terms and clear statutory meaning of INA § 236(c), 8 U.S.C.
§ 1226(c).

52.   In contrast to the near-unanimity among the federal district courts, the Board of
Immigration Appeals has held that a noncitizen is subject to mandatory detention under
INA § 236(c), 8 U.S.C. § 1226(c) even when not taken into custody immediately after
having been released from incarceration on parole. *Matter of Rojas*, 23 I. & N. Dec. 117
(B.I.A. 2001). While this decision remains binding precedent within the immigration

courts, its reasoning is sharply divergent from the collected interpretations of the federal courts. As federal courts have held, Congress did not intend for an individual such as Ms. Pinnock, who had been released and had returned to her community, to be detained without any opportunity to seek release through a bond hearing. *See, e.g.*, *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1224 (W.D. Wash. 2004) (holding that an alien who was taken into immigration custody months or years after his release from state custody was entitled to an individualized hearing on release pending removal proceedings). For this reason, no published federal court decision has deferred to *Matter of Rojas*. The vast majority of all decisions have held that Congress's intention is clear and that individuals like Ms. Pinnock are not subject to mandatory detention.

D.   Application of INA § 236(c), 8 U.S.C. § 1226(c) to Ms. Pinnock's case would raise serious constitutional concerns.

53.   By holding that Ms. Pinnock is not subject to mandatory detention, this Court can avoid the significant Constitutional concerns raised by this case. *See* U.S. Const. amend. V. The Supreme Court and lower courts have noted that mandatory detention past the five or six-month mark, even in cases where it is statutorily authorized by Congress, raises serious constitutional questions and courts have construed the detention provisions to avoid such results. *See Demore v. Kim*, 538 U.S. 510, 530 (2003) (emphasizing that constitutional concerns were satisfied based on an "average" of one and a half months of detention in most cases, and approximately five months in cases where the alien chose to appeal); *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) ("We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months."); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) (interpreting the mandatory detention statute to apply only to "expedited removal of criminal aliens.");

*Monestime v. Reilly*, 704 F. Supp. 2d 453, 458 (S.D.N.Y. 2010) (observing that "the Supreme Court noted that five months is generally the upper limit for mandatory detention" and that extending detention longer than six months is "constitutionally questionable") (citing *Demore*, 533 U.S. at 530-31).  In light of these constitutional concerns, INA § 236(c), 8 U.S.C. § 1226(c) cannot be deemed to apply to Ms. Pinnock, who has filed a petition for review in federal court, whose removal has effectively been stayed, and who has already been detained for over two years and will be detained for an indeterminate period of time if not released while her federal appeal and S Visa application are pending.

54.     The Supreme Court, federal courts of appeals, and federal district courts have granted habeas petitions where the DHS has held immigrants for prolonged or indefinite periods of time.  *See, e.g., Zadvydas*, 533 U.S. at 690 (noting the use of "stringent time limitations" on the deprivation of liberty for "preventative detention" and applying a 6-month benchmark after a final order has been issued); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) (avoiding constitutional questions by interpreting INA § 236(c), 8 U.S.C § 1226(c) to be authorized only for "expedited removal of criminal aliens"); *Ly v. Hansen*, 351 F.3d 263, 271-72 (6th Cir. 2003) (affirming grant of writ of habeas corpus because detention extended beyond "reasonable" period, assessed according to the facts of the individual case).

55.     Respondents therefore have the authority to release Ms. Pinnock on her own recognizance or through the setting of a minimum bond.  *See* INA § 236(a), 8 U.S.C. § 1226(a).  As indicated in her request for release from detention, Ms. Pinnock presents neither a flight risk nor a danger to the community.  *See* 8 C.F.R. § 1003.19(h)(3).  On the

contrary, she has strong community ties; the support of her family; a residence waiting for her upon release; and every reason to continue defending her case against removal and therefore to comply with any conditions of supervision.  Ex. B, Release Request.

## VII.  **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests this Court to:

(1)     Assume jurisdiction over this matter;

(2)     Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately on her own recognizance or bond or reasonable conditions of supervision, or, in the alternative, an individualized hearing before an impartial adjudicator at which Respondents bear the burden of establishing that Petitioner's continued detention is justified.

(3)     Award Petitioner her costs and reasonable attorneys' fees in this action as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other statute; and

(4)     Grant such further relief as the Court deems just and proper.

Dated: April 15, 2011

HUGHES HUBBARD & REED LLP
A NEW YORK LIMITED LIABILITY PARTNERSHIP

By: _____
Robert W. Brundige, Jr.
Stephen Lanza
101 Hudson Street, Suite 3601
Jersey City, New Jersey 07302-3910
Telephone:  (201) 536-9220